## General Accident Group v. Doctorovitz

*Henry I. Einbinder,* for plaintiff.
*Drew S. Dorfman,* for defendant.

KALISH, *J.*, November 26, 1979—

### I. BACKGROUND

Defendant, an uninsured motorist, was injured in an automobile accident on February 10, 1977, while driving his own automobile. He filed a claim for loss benefits under the Assigned Claims Plan, section 108 of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.108. Defendant's claim of $3,629 was assigned to and timely paid by General Accident Group. Now General Accident Group sues under section 501 of the No-fault Act to recover from defendant as "owner" the amount paid to him as injured "occupant" of the motor vehicle. Defendant has filed preliminary objections, contending that to permit recovery by General Acci-

dent would negate the entire assigned claims plan and produce the anomalous result of having given with one hand, then taken away with the other. Plaintiff claims however that the anomaly is rather in allowing the owner to be free of section 501 liability merely because he happened to be also the injured occupant of his own vehicle. This court must agree with plaintiff.

## II. DISCUSSION

The Assigned Claims Plan of the Pennsylvania No-fault Act, 40 P.S. §1009.108,[1] provides basic loss benefits[2] for all victims injured in auto accidents which involve an uninsured motorist or where no insurance company is obligated to pay, and which occur after the act's effective date. This is achieved by assigning the claim to a participating insurance company. Thus, even an automobile owner who fails to insure as required is still entitled to receive basic loss benefits, less certain deductibles, if he is injured. In this case, defendant sought and received benefits as an injured "occupant" under section 108.

---

1. "§1009.108 Assigned claims plan

(a) General.—(1) If this act is in effect on the date when the accident resulting in injury occurs, a victim or the survivor or survivors of a deceased victim may obtain basic benefits through the assigned claims plan established pursuant to subsection (b) of this section, if basic loss insurance: (A) is not applicable to the injury for a reason other than those specified in the provisions on ineligible claimants."

2. Basic loss benefits are defined as: "benefits provided in accordance with this act for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms and conditions provided or authorized in accordance with [the] act." 40 P.S. §1009.103.

Section 501 of the No-fault Act provides that the obligor obligated to pay basic loss benefits to an injured occupant of a motor vehicle, the owner of which is uninsured "shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate."

Defendant contends that if section 501 is applied to recover payments made under section 108 to the injured owner (as "occupant") of the vehicle, the result would be absurd, unreasonable and contrary to public interest. Curiously, defendant bases this contention on a rule of statutory construction which presumes that the legislature does not intend an absurd or unreasonable result when two sections of a statute are construed together, but does intend the result to be both effective and fair. Defendant views the application of section 501 to him to be ineffective and unfair. However, this court's view of the matter is directly contrary to that of defendant. First, defendant's proposed result would be *unfair* to, inter alia, all insured motorists whose diligent payment of premiums makes the no-fault system possible. Second, such result would be *ineffective* to deter automobile owners against failing to insure as defendant has done. Defendant's hollow reasoning is devoid of substance, and it is this court's determination that the public interest would only be served by applying section 501. As defendant himself points out, the stated purpose of the No-fault Act is to establish "a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims." Section 102(b). Although it is initially difficult to perceive the owner who fails to insure as a "victim," that is not an issue under the act. But defendant neglects to

point out that the very title of the act describes it as "An Act . . . requiring insurance for all motor vehicles required to be registered in Pennsylvania . . ." The means by which the act provides benefits to victims is the requirement of insurance by owners. If an owner fails to insure, the logical alternative is to assess him for the amount of any actual loss sustained, in this case by the insurance company obligated to pay benefits under an assigned claim.

Defendant questions the two-step process which to him conjures up the proverbial vision of one hand giving while the other takes away. Although the use of these two somewhat contradictory steps may appear self-defeating, the two-step process is actually quite consistent when viewed in proper perspective. The rationale for paying claimant first and questioning his entitlement second is clearly stated in the statute:

"(9) A Statewide low-cost, comprehensive, and fair system . . . can save and restore the lives of countless victims by providing and paying the cost of services so that every victim has the opportunity to: (A) receive prompt and comprehensive professional treatment; and (B) be rehabilitated to the point where he can return as a useful member of society and a self-respecting and self-supporting citizen." 40 P.S. §1009.102(a)(9).

Compensating the injured victim is no-fault's primary concern, thus it is the first step employed. Only after that step is completed can the owner be assessed for the amount of the compensation. To strictly enforce the pay now, ask later scheme, section 106 requires that benefits be paid to the victim within 30 days, and imposes a penalty if they are not.

Here, defendant received his benefits promptly as contemplated by the plan and was thereby enabled to obtain medical treatment, pay off his bills and "return as a useful member of society." In cases where the injured claimant is not the owner, the two-step process also allows the claimant to obtain his compensation at the outset and escape involvement in any dispute or litigation between the insurance company and the ultimately responsible uninsured owner. The fact that defendant here falls into two categories within section 501, owner and occupant, makes no difference in the section's application to him. Defendant cannot in good faith select which role he will play to the exclusion of another, equally well-suited. According to defendant's theory, an automobile owner who habitually drives only himself could make a potentially profitable decision not to insure: that way he saves the cost of insurance premiums, yet, if injured, receives benefits under an assigned claim.

Section 501 is a risk of loss section. It dictates who will ultimately bear the risk of loss in an uninsured motorist claim. The plaintiff's right of recovery thereunder cannot be stated more clearly—the obligor "shall be entitled to recover. . . ."[3] His right is unconditional,[4] and defendant's liability strict. Our legislators obviously felt that those who

---

3. Cf. Cataldo v. Rick, 10 D. & C. 3d 348, 352 (1979), where the court distinguished between the obligor-insurance company's right to sue as a subrogee under section 108, and the very different right to reimbursement under section 501.

4. Section 501 neither says nor implies that proof of negligence or fault is requisite to the obligor seeking payment. Since no-fault was enacted due to problems with the fault system, 40 P.S. §1008.102(a)(5), to infer a requirement of fault as a condi-

fail to participate in the no-fault system should not be placed in a better position by it. However, it should be emphasized that section 501 is not a penalty provision but a remedial one.[5] It puts defendant in the position he would be in without the benefit of the act and restores the insurance company, who is entitled to a measure of predictability, to its position prior to the assigned claim.

Finally, defendant ignores section 301 which abolishes tort liability under the act, "except that: (1) An owner of a motor vehicle involved in an accident remains liable if, at the time of the accident, the vehicle was not a secured vehicle."

In the context of no-fault defendant gambled and lost. He cannot expect to be permanently benefitted by the same law which he deliberately chose to disobey. To countenance defendant's intended result would seriously undermine our no-fault system.

Accordingly, this court enters the following

## ORDER

And now, November 26, 1979, defendant's preliminary objections to plaintiff's complaint are hereby dismissed.

---

tion precedent to section 501 liability would be incongruous. This court can only assume that had the legislature meant to provide for such a contradiction in terms it would certainly have highlighted that intention. This court is aware that the Pa. Trial Lawyers' Association No-Fault Handbook (1978) reaches the opposite conclusion but does not find the reasoning there persuasive.

5. Note the section's physical placement in the act is not among the penalty provisions of article VI.